**Robert D. MURGIA, Plaintiff,**

v.

**COMMONWEALTH OF MASSACHU-SETTS BOARD OF RETIREMENT et al., Defendants.**

Civ. A. No. 72–2083–T.

United States District Court,
D. Massachusetts.

May 31, 1974.

Robert L. Wise, Wise & Wise, William F. Looney, Jr., Moulton, Looney, Mazzone, Falk & Markham, Robert D. City, Boston, Mass., for plaintiff.

Terence P. O'Malley, Robert Quinn, Atty. Gen. of Mass., Walter H. Mayo III, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

Before ALDRICH, Senior Circuit Judge, FREEDMAN and TAURO, District Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff, Robert D. Murgia, brings this three-judge district court action to declare unconstitutional, and to obtain injunctive relief against the enforcement of, Mass.G.L. c. 32 § 26(3). Pursuant to that statute plaintiff, a Lt. Colonel in the Uniformed Branch of the Massachusetts State Police, was involuntarily retired because, having completed over 20 years of service, he had reached age 50. He alleges that mandatory retirement at that age is a violation of his civil rights of due process and equal protection. He also alleges sex discrimination because under the law, although apparently not now in practice, women police officers may enlist after age 30, and thus automatically may serve beyond age

50.[1] We reach only one issue, that a classification based on age 50 alone lacks a rational basis in furthering any substantial state interest.

Until age 40 every officer is given a comprehensive physical examination every two years, and after age 40, every year. Failure to pass results in disability retirement unless the particular physical defect is waived by the Commissioner of Public Safety.[2] Plaintiff's standing is self-evident; the testimony is undisputed that at the time of his discharge he was in excellent physical health and capable of performing the duties of a state police officer, whether involving physical or psychological stress. At the same time, it is acknowledged that service in this branch is, or can be, arduous,[3] and that high versatility is required, with few, if any, backwaters available for the partially superannuated. Lest there be misunderstanding, we do not fault the service in this respect; the state is entitled to maintain rigorous job requirements; nor do we understand plaintiff to contend otherwise.

■■ Our first question could be the standard to apply in testing the constitutionality of the statute; whether, because plaintiff's right to employment may be a fundamental interest or because age might be a suspect classification, the burden is on the state to show a compelling interest, or whether, on the other hand, the burden is on the plain-

tiff to show a lack of rational basis. However, since we find that plaintiff has succeeded in this last, we need not proceed further. We hold that plaintiff has at least a recognizable interest in retaining his employment [4] which the state cannot deny arbitrarily and irrationally, Drown v. Portsmouth School District, 1 Cir., 1971, 451 F.2d 1106, 1108; see Board of Regents v. Roth, 1972, 408 U.S. 564, 576–577, 92 S.Ct. 2701, 33 L.Ed.2d 548; Wieman v. Updegraff, 1952, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216, and we find that mandatory retirement of officers at 50 years of age bears no "fair and substantial relation to the object of the legislation," F. S. Royster Guano Co. v. Virginia, 1920, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989, quoted in Reed v. Reed, 1971, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225.

We dispose readily of certain of the state's contentions. Its argument that early retirement enhances the morale of the younger members, in a sense assumes the point. Of course, if there are only younger members, they are happier than the older members who are being eliminated. This does not add up on balance, but merely advances the time of ultimate unhappiness.[5] The same can be said with respect to the alleged desirability of rapid promotion; the attractiveness of quick promotion must be weighed against the unattractiveness of early retirement. Furthermore, to the extent that the purpose of early retire-

1. Had plaintiff not served 20 years, he could have remained on the force until he did so. However, since under the law no male may enlist after age 30, this extension can presently occur only for certain individuals who have resigned, or taken a leave of absence, and rejoined at some later date. On the record this is an unusual occurrence, and we will assume the existence of legitimate grounds for the exception. Nor will we concern ourselves with the technical sex discrimination.

2. Senior officer of the Uniformed Branch, and head of the Department of Public Safety, of which the State Police is a division.

3. We assume, at least for present purposes, that the duties are sufficiently more arduous

than, or the physical and mental stresses significantly different from, those of detectives or policemen in other branches and at other levels of government, so that there is no viable unequal protection claim in this area.

4. To the extent that it may affect plaintiff's due process rights, see Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, we note that after six years of service no officer who passes the physical can be denied reenlistment. Mass.G.L. c. 22, § 9A.

5. We would concede vitality to the morale argument if officers not capable of carrying their full load were to be retained, but this is not the question. See ante.

ment is said to be to empty higher ranking positions after they have been occupied by one person for a reasonable time, the cut-off at 50 years is of questionable consequence since it is unrelated to the period of time the retiree has occupied his last position.[6] The alleged desirability of facilitating rapid promotion by early retirement, rather than a justification, will be seen on analysis to be age discrimination per se.

The only question requiring serious consideration is whether mandatory retirement at age 50 is rationally related to maintaining a vigorous, healthy personnel. Even plaintiff's experts concede that there is a general relationship between advancing age and decreasing physical ability to respond to the demands of the job. On the other hand, the state does not dispute their testimony that the relation between chronological age and functional age varies greatly from one individual to the next. Its response is that in matters of this sort it is administratively reasonable to select an arbitrary cut-off, and that irrationality is not established by the fact that certain individuals are disadvantaged thereby. Cf. Wickard v. Filburn, 1942, 317 U.S. 111, 129–130, 63 S.Ct. 82, 87 L.Ed. 122.

We fully accept the necessity of choosing arbitrary standards in certain, and indeed in many, situations. For example, in dealing with the immeasurable changes relating to the onset of maturity, legislatures may require a specific age for voting, Oregon v. Mitchell, 1970, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272, even though the particular age selected may seem indifferentiable from other ages in proximity to it. Id. at 294 (Stewart, J., concurring in part and dissenting in part); see id. at 243–246 (Brennan, White and Marshall, JJ., concurring in part and dissenting in part). See also, e. g., United States v. Duncan, 9 Cir., 1972, 456 F.2d 1401, 1405 (minimum age for jury service), vacated on other grounds, 409 U.S. 814, 93 S.Ct. 161, 34 L.Ed.2d 72; Smith v. United States, 9 Cir., 1970, 424 F.2d 267 (selective service age limitations); Scarangella v. Commissioner of Internal Revenue, 3 Cir., 1969, 418 F.2d 228 (classification of tax exemptions by age of dependent). But to say that a line may be drawn arbitrarily when there is no readily discernible breaking, or turning, point, does not mean that the line can be drawn anywhere at all. To satisfy minimal standards of rationality the line must be drawn within a range where fairness, or some appreciable state interest, exists, even if no specific point within that range is preferable to any other.

In the voting and other cases above cited, the legislature was concerned with a broad spectrum of the population where it would not be practicable to make individual determinations. Under such circumstances an arbitrary standard is called for, if not inevitable, and the only question must be whether the one selected is, in the large, reasonable. In the case at bar the situation is exactly the reverse. Individual testing is not impracticable but, rather, is already the order of the day. There is no suggestion that it is more burdensome to examine an officer at age 50 than it was at age 49. We must look, therefore, in another direction for reasonableness—is there, for example, a greater risk at the higher age that the test, or, more exactly, the prognosis based upon testing, will be less reliable?

In this connection we note the case of Air Line Pilots Ass'n, Int'l v. Quesada, 2 Cir., 1960, 276 F.2d 892, cert. denied 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254, upholding as not "arbitrary and discriminatory and without relation to any requirement of safety" an administrative ruling disqualifying pilots from active duty upon reaching age 60. In so doing the court pointed out the comprehensive study conducted by the administrator, and the documented reasons for his conclusion that by age 60, in spite of medical testing, a critical area had been reached. See 276 F.2d at 898. No such

---

6. An officer qualifying for promotion, or for further promotion, is not required to accept it.

determination has been, or could be made, in the case at bar. So far as appears, no study has been conducted of any kind. While there has been a compilation of certain statistics, from defendants' standpoint they are counterproductive. Not only did no expert testify to any significance in age 50 in a group which, by hypothesis, had individually passed annual tests during the preceding decade, but statistics of actual experience forecast no imminent change. In the Uniformed Branch during the period November 1967 to December 1973 there were fifteen discharges of persons between the ages of 40 and 50 for non-injury disability, divided as follows.

| Age 40–3 | Age 45–1 |
| 41–3 | 46–3 |
| 42–1 | 47–2 |
| 43–1 | 48–1 |
| 44–0 | 49–0 |
| 8 | 7 |

The force of these figures is not offset by a growth curve of waivers in the place of disability retirements.[7] The statistics furnish no reason to suppose that age 50 is within, or even significantly approaching, a range where changes of conditions warrant a change of treatment. Rather, they contradict it.

7. Thus in the year 1973, ten waivers of partial, although permanent, non-injury disability were granted in the 40–50 age group. These divided as follows.

| Age 40–0 | Age 45–2 |
| 41–2 | 46–0 |
| 42–1 | 47–0 |
| 43–1 | 48–2 |
| 44–2 | 49–0 |
| 6 | 4 |

8. We do not regard Thomas v. Pate, 7 Cir., 1974, 493 F.2d 151 (prisoners under 40 denied free long underwear) as in any way contra. We read that case, *inter alia*, as

If, further, we turn from Massachusetts to national experience as disclosed by legislative response, plaintiff has furnished a list of statutes from which it appears that Massachusetts is the only state compulsorily retiring police officers before age 55.

On this record we find that mandatory retirement at age 50, where individualized medical screening is not only available but already required, is no more rational, and no more related to a protectable state interest, than the mandatory suspension or discharge of school teachers upon reaching their fourth or fifth month of pregnancy.[8] Cleveland Board of Education v. LaFleur (1974), 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52. Recognizing the public interest in protecting individuals' right to work, and against discrimination on account of age, *see, e. g.*, Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621; Mass.G.L. c. 149, § 24A and c. 151B, we are compelled to strike down the present age distinction where plaintiff has established the absence of any factual basis therefor.[9]

Judgment will be entered declaring Mass.G.L. c. 32 § 26(3) unconstitutional and void, and awarding, after hearing, appropriate mandatory relief.

one where plaintiff failed to make allegations specific enough to raise an issue of irrationality.

9. Whether we would reach the same result if the statute selected a more customary retirement age is not before us. With great respect to Mr. Justice Rehnquist, dissenting in Cleveland Board of Education v. LaFleur, ante, we would anticipate the question of mandatory retirement at age 70 not to be the same as at age 50, but perhaps we say this because of the increasing difficulties that a plaintiff might have to show that at that greater age the state had not made out a factually rational argument.