CORRECTION OFFICERS LOCAL 419,
A.F.S.C.M.E., AFL–CIO, Plaintiff,

v.

William WELD, Governor of the Commonwealth of Massachusetts, and Robert Rufo, Sheriff of Suffolk County, Defendants.

Civ. A. No. 91–11843–T.

United States District Court,
D. Massachusetts.

July 31, 1991.

James F. Lamond, McDonald, Noonan & Kaplan, Newton, Mass., for plaintiff.

Luis A. Lavin, Asst. Atty. Gen., Government Bureau, Chester A. Janiak, Burns & Levinson, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

### I

### INTRODUCTION

On July 10, 1991, defendant Governor Weld signed into law the 1992 fiscal year budget. *See* 1991 Mass.Acts ch. 138. The next day, plaintiff Correction Officers Local 419 brought this action seeking to enjoin Weld and defendant Sheriff Rufo from implementing certain provisions of the budget. Specifically, plaintiff alleges that §§ 358, 362, and 363 of the budget deprive its members of their protected rights under Mass.Gen.L. ch. 31 in violation of the substantive due process component of U.S. Const. amend. XIV, § 1.

## II

## FACTS

### A. Deer Island

Plaintiff represents approximately 300 persons employed in the civil service titles of correction officer I, II, III, and IV at the Suffolk County House of Correction on Deer Island ("Deer Island"). See Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at 3 [hereinafter Memorandum]. Deer Island has been the site of a House of Correction since the late nineteenth century.[1] Since its inception, Deer Island has been under the control of the Commissioner of the Penal Institutions Department of the City of Boston. The recently enacted budget for fiscal year 1992 transferred control of all Deer Island employees to the sheriff of Suffolk County, see 1991 Mass.Acts ch. 138, § 362, and removed them from the coverage of Mass. Gen.L. ch. 31, the Massachusetts civil service law. See id. § 363(a).

### B. Mass.Gen.L. ch. 31

Mass.Gen.L. ch. 31 provided a mechanism for correction officers to become "permanent employees." See §§ 1 and 6. About half of plaintiff's members were permanent employees within the meaning of ch. 31. See Memorandum at 3. Chapter 31 provided permanent employees with certain rights, including the right not to be discharged except for just cause, after notice

and hearing, and with a right to appeal to the Civil Service Commission. See Mass. Gen.L. ch. 31, § 41. Chapter 31 also provided permanent employees with seniority rights. See id., § 39. Although the budget no longer provides plaintiff's members with the rights they enjoyed under ch. 31, other statutes provide some of the members with similar protection. See 1960 Mass.Acts ch. 135 (applies to employees with at least seven years of service); see also Mass.Gen.L. ch. 30, § 9A (applies to employees with at least three years of service who are veterans).

## III

## ANALYSIS

### A. Standard for Injunctive Relief

To allow plaintiff's motion for a preliminary injunction, this court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant[s]; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Camel Hair & Cashmere Inst. of America, Inc. v. Assoc. Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986). Here, plaintiff has not exhibited a likelihood of success on the merits.[2]

---

1. Suffolk County has begun construction of a new House of Correction at South Bay to replace the antiquated facility at Deer Island. *See* Second Affidavit of Robert C. Rufo at ¶ 7. Deer Island has also been at the center of recent litigation involving the Boston Harbor "clean-up" project. For a summary of that case to date, see *United States v. Metro. Dist. Comm'n*, 757 F.Supp. 121 (D.Mass.), *aff'd*, 930 F.2d 132 (1st Cir.1991). Judge Mazzone has ordered the decommissioning of Deer Island by December 31, 1991 to facilitate construction of the new wastewater treatment plant at that location. *See* Memorandum and Order Scheduling The Decommissioning of the Deer Island Prison, *United States v. Metro. Dist. Comm'n*, CA No. 85–0489–MA (D.Mass. July 22, 1988).

2. As plaintiff's failure to exhibit a likelihood of success on the merits is dispositive of its motion for a preliminary injunction, this court need not

address the three other requirements for injunctive relief. The following arguments strongly suggest, however, that plaintiff's members will not suffer irreparable injury if the injunction is not granted. First, only half of plaintiff's members even have a protected property interest at stake. *See Bennett v. City of Boston*, 869 F.2d 19, 22 (1st Cir.1989) (holding that a "provisional" corrections officer did not have a protected property interest in continued employment under the fourteenth amendment). Second, the challenged legislation specifically states that the transfer of employees to the sheriff of Suffolk County "shall be made without impairment of seniority and without reduction in compensation and salary notwithstanding any change in job titles or duties and without loss of accrued rights to holidays, sick leave, vacation, and group insurance benefits." 1991 Mass.Acts ch. 138, § 362. Third, many of the permanent employees are now protected under 1960 Mass.Acts

## B. *Likelihood of Success on the Merits*

Plaintiff contends that the budget provisions violate the rights of its members to substantive due process under the fourteenth amendment. Specifically, plaintiff argues that the legislature acted in an arbitrary and irrational way in removing its members from the coverage of Mass. Gen.L. ch. 31. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.").[3] Here, not only did the legislature have a rational basis for enacting the challenged provisions, the legislative process provided plaintiff with all the process that it was due.

### 1. Rational Basis

■■■ The legislature did not act in an "arbitrary and irrational way" in enacting the challenged provisions. To the contrary, several valid reasons support the legislature's decision to transfer control of Deer Island to Sheriff Rufo. First, the legislation places under a single statutory scheme all the employees of the Suffolk County Sheriff's Department, thus providing all employees the same rights and eliminating the need for a dual system of personnel administration. Second, the legislation keeps the Suffolk County Sheriff's Department in harmony with other Sheriff's departments in the Commonwealth, none of which are covered by Mass.Gen.L. ch. 31. Third, it provides Sheriff Rufo with the flexibility to transfer employees from one facility to another and from one job position to another. *See* Second Affidavit of Robert C. Rufo at ¶ 17. The challenged provisions do not, therefore, violate the rights of plaintiff's members to substantive due process, especially in light of the court-ordered closing of Deer Island and the scheduled occupancy of the new House of Correction at South Bay later this year. *See supra* note 1; *see also Comm. of United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 943–44 (D.C.Cir. 1988) ("Substantive due process doctrine does not protect individuals from all [g]overnmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or action that is 'legally irrational and that it is not sufficiently keyed to any legitimate state interests.'") (citations omitted), *quoted in Hoffman v. City of Warwick,* 909 F.2d 608, 619 (1st Cir.1990).[4]

---

ch. 135 and Mass.Gen.L. ch. 30, § 9A, which incorporate by reference several provisions of Mass.Gen.L. ch. 31. Finally, plaintiff's members may also rely on the grievance and arbitration provisions of their collective bargaining agreement to enforce their individual employee rights.

3. Plaintiff offers no support for its alternative argument that the rights of its members under Mass.Gen.L. ch. 31 constitute "fundamental" rights warranting application of a higher level of scrutiny than the rational basis test enunciated in *Usery. See* Memorandum at 10.

4. Plaintiff raises two other arguments in support of its position that it has demonstrated a likelihood of success on the merits. First, plaintiff alleges that in enacting the budget provisions, the "legislature has sought to retroactively remove a class of employees, who are already tenured under a civil service system, from the coverage of such civil service laws." Memorandum at 10. This argument fails, however, as the budget provisions here apply prospectively only. As a result, this case differs from the legislation at issue in *Hoffman,* which by its own terms applied retroactively. *See* 909 F.2d at 611 (quoting 1985 R.I.Pub.Laws ch. 181, § 64). At any rate, the First Circuit held in *Hoffman* that the Rhode Island legislature's repeal of a statute which provided enhanced seniority in employment for returning war veterans *passed rational basis review. Id.* at 618. Second, plaintiff contends that its members relied on the fact that the position of correction officer at Deer Island was within the civil service in accepting employment at that facility. *See* Plaintiff's Supplemental Memorandum at 2–3. Although reliance on the current state of the law is a relevant factor for courts to consider in assessing the constitutionality of retroactive legislation, *see Usery,* 428 U.S. at 17, 96 S.Ct. at 2893, it has less bearing in cases involving prospective legislation. In either case, the appropriate level of judicial scrutiny is rational basis review. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717,

## 2. Legislative Process[5]

■ Courts have repeatedly held that legislative action removing an employment or other benefit previously granted does not violate due process. For example, in *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), the Supreme Court considered a 1981 amendment to the Food Stamp Act that lowered the earned-income deduction from 20 percent to 18 percent and resulted in a reduction of benefits for many food-stamp households. In upholding the legislature's right to adjust benefit levels, the Court noted that "the 1981 entitlement did not include any right to have the program continue indefinitely at the same level." *Id.* at 129, 105 S.Ct. at 2529. The Court concluded that "[t]he legislative determination provides all the process that is due." *Id.* at 130, 105 S.Ct. at 2529 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982)).

The Eighth Circuit reached a similar result in *Gattis v. Gravett*, 806 F.2d 778 (8th Cir.1986). In *Gattis*, the court upheld an act of the Arkansas legislature which removed from civil service status certain personnel in sheriff departments across the state. In rejecting the due process challenges of two employees fired six weeks after the passage of the act, the court held,

"[T]he legislature which creates a property interest may rescind it, whether the legislative body is federal or state and whether the interest is an entitlement to economic benefits, a statutory cause of action or *civil service job protections.*" *Id.* at 781 (emphasis added). A similar conclusion is warranted here.[6]

## IV

## CONCLUSION

Plaintiff's failure to demonstrate a likelihood of success on the merits leaves this court with no choice but to deny its motion for a preliminary injunction. In doing so, this court expresses no opinion as to the wisdom of the legislature's decision to remove the correction officers at Deer Island from the coverage of Mass.Gen.L. ch. 31. This court does find, however, that the legislature did not act in an "arbitrary and irrational way" in enacting §§ 358, 362, and 363 of the 1992 fiscal year budget. As a result, the challenged provisions pass rational basis review.

---

104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). Here, even considering the reliance of plaintiff's members, the challenged provisions pass that test. The legislature did not act in an "arbitrary and irrational way" in removing the correction officers at Deer Island from the protections of Mass.Gen.L. ch. 31.

**5.** Although this section addresses procedural due process issues not raised by plaintiff in its Memorandum, plaintiff does claim that the legislature inserted the challenged provisions into the budget bill at the eleventh hour and that the legislation "bears none of the indices of legitimacy which might otherwise entitle it to the deference that it is typically afforded a validly-enacted state statute." Memorandum at 12. Enacting legislation at the eleventh hour does not, however, constitute a "defect in the legislative process." *See Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985). In addition, Sheriff Rufo states in his second affidavit that Mayor Flynn submitted a draft of a bill that transferred control of Deer Island to him as far back as December 1990. *See* Second Affidavit of Robert C. Rufo at ¶ 5.

**6.** The Massachusetts Supreme Judicial Court reached the same result in *McCarthy v. Sheriff of Suffolk County*, 366 Mass. 779, 322 N.E.2d 758 (1975). In that case, plaintiffs challenged legislation that reduced the mandatory retirement age for court officer employees of the Sheriff's Department from 70 to 65. Writing for the court, Chief Justice Tauro held that the legislation did not violate plaintiffs' constitutional rights:

It is well settled that, where an office is created by the Legislature and not by the Constitution, "[I]t may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require." ... The Legislature is free to alter the methods for appointment and removal of State officers, *as well as to change their duties or tenure.* The fact that an officer is appointed for "good behavior," removable for cause, does not alter this result.

322 N.E.2d at 761 (citations omitted) (emphasis added).