Gardner, J.
The parties executed an agreement for the purchase and sale of a newly constructed house and the land on which it was situated in Belchertown. No closing took place. Alleging that the defendant-purchasers had breached the agreement by refusing to proceed with the transaction, Cold Spring Commons, LLC (“Cold Spring”), the seller, brought this action to recover both the defendants’ $22,800.00 preclosing deposits and the cost of construction “extras” they had ordered. The prospective purchasers, Thomas R. and Teresa M. Mitchell (“Mitchells”), counterclaimed for the return of their deposits based on Cold Spring’s alleged failure to perform before the expiration of an extension of the time for closing. The trial court allowed the Mitchells’ Mass. R. Civ. R, Rule 56, motion for summary judgment on their counterclaim, and Cold Spring filed this Dist./Mun. Cts. R. A D. A, Rule 8C, appeal.[2]
As the Mitchells failed to file a supporting affidavit to substantiate many of the factual assertions in their motion, the trial court limited its Rule 56 review to the pleadings and an opposing affidavit submitted by Cold Spring’s attorney, Edward D. Etheredge, Esq. (“Etheredge”). Based on those materials, it is undisputed that on April 22, 2006, the parties executed an agreement for the Mitchells’ purchase of property at 190 Sabin St., Belchertown, that was owned and being developed by Cold *25 Spring. The Mitchells paid two deposits totaling $22,800.00. Paragraph 9 of the agreement specified that the “closing date shall be on or before May 25,2006, or five (5) days after receiving a Certificate of Occupancy, whichever shall first occur.” As the property was subject to an Order of Conditions imposed by the Belchertown Conservation Committee, Cold Spring’s ability to convey the property depended upon its obtaining, prior to the closing, either a certificate of compliance or a partial release of the conservation conditions plus a certificate of occupancy.
On May 25, 2006, the scheduled date for closing, Cold Spring was unable to perform its obligation as seller because it had failed to obtain a certificate of occupancy and even a partial release from the Conservation Committee of the Order of Conditions. The closing date was, thus, extended for thirty (30) days pursuant to paragraph 12 of the purchase and sale agreement, which stated:
12. If the SELLER shall be unable after reasonable efforts, to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, then SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder and thereupon the time for performance hereof shall be extended for a period of up to thirty days. SELLER’S efforts shall be limited to the reasonable efforts necessary to cure such defect within said thirty days, provided that Buyer’s mortgage may be so extended.
The last day of the 30-day extension period fell on Saturday, June 24,2006. No closing was held.
The motion judge determined, and the parties do not dispute, that a certificate of occupancy was not issued until Monday, June 26,2006. On that same date (but at an undisclosed time), the Conservation Commission voted to give Cold Spring a partial release of the Order of Conditions. The judge also noted that on June 27, 2006, the Mitchells’ attorney notified Cold Spring’s counsel that pursuant to paragraphs 9,12 and 13 of the parties’ agreement, and because of the alleged expiration of their mortgage loan commitment, they would not proceed with the transaction. On June 28, 2006, Cold Spring notified the Mitchells that it was ready, willing and able to perform, and would appear for the closing at noon on July 5, 2006 at the Registry of Deeds. No closing took place, and this suit was filed two months later.
Ruling that the language of the purchase and sale agreement, prepared by Cold Spring, was “clear, precise, complete, comprehensive and thorough,” the motion judge concluded that Cold Spring was unable to perform “at the last possible date it set for itself’ in the agreement,[3] and that the Mitchells were thus entitled to a return *26 of their deposits pursuant to paragraph 13, which provided:
13. If, at the expiration of the extended time the SELLER shall have failed to remove any defects in title, deliver possession, or make the premises conform, as the case may be... then any payments made under this Agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto.
There was no error. Even on the basis of the limited Rule 56 materials presented by the parties and reviewed by the trial court, the Mitchells satisfied their summary judgment burden of establishing the absence of any material factual dispute and their entitlement to judgment as a matter of law. Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s, London, 449 Mass. 621, 628 (2007), citing Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Cold Spring’s sole argument on this appeal is that because the last day of the 30-day extension period fell on June 24,2006, a Saturday, the time for its contract performance was further extended by operation of law to the next day that was not a Saturday, Sunday or holiday, namely, Monday, June 26,2006. Cold Spring’s reliance on Dist/Mun. Cts. R. A D. A, Rule 14(a), as authority for its contention is misplaced. As Dist./Mun. Cts. R. A D. A, Rule 1(a), states, the District and Municipal Court Rules for Appellate Division Appeal govern appeals to the Appellate Division. There is nothing in those rules, or in any other authority cited by Cold Spring, that suggests that appellate procedural rules are in any way relevant, much less controlling, in construing contractual time periods designated by the parties as governing the rights and obligations created by their agreement.
It is true, generally, that “the law existing at the time a contract is made is read into that contract.” McCarthy v. Sheriff of Suffolk County, 366 Mass. 779, 784 n.9 (1975), citing Home Bldg. & Loan Ass’n v. Blaisdell, 290 U.S. 398, 429-430 (1934). Thus, it may be argued, the parties’ April, 2005 purchase and sale agreement would have been subject to the time computation principles set forth in G.L.c. 4, §9, which provide:
[Wjhen the day or the last day for the performance of any act, including the making of any payment or tender of payment, authorized or required by statute or by contract, falls on a Sunday or legal holiday, the act may, unless it is specifically authorized or required to be performed on Sunday or on a legal holiday, be performed on the next succeeding business day.
In this case, however, the last day of the extension period was a Saturday, not a Sunday or a legal holiday. And while courts have, in some instances, extended the G.L.c. 4, §9 “Sunday rule” to Saturday, they have done so only when reading the statute in conjunction with other relevant statutory provisions. See Mahoney v. DeMatteo-Flatiron LLP, 66 Mass. App. Ct. 903, 904 (2006); Miller v. City of Boston, 25 Mass. App. Ct. 997 (1988).
Moreover, even if there were any merit to Cold Spring’s argument that Monday, June 26,2006 should be considered the last day of the extension period rather than the actual 30th day of Saturday, June 24,2006, the Mitchells would still be entitled to summary judgment on their counterclaim for the return of their deposits. The reason is that the contract date extended for 30 days was the May 25,2006 closing date, not simply a final date by which Cold Spring had merely to obtain the prerequisites to closing. *27 Although the necessity and purpose of the extension of time was to enable Cold Spring to remove any defect in title or other obstacles to conveyance, paragraph 12 of the purchase and sale agreement unequivocally states that it was the “time for performance” that was “extended for a period of up to thirty days.” While Cold Spring finally secured an occupancy certificate and partial release of the Order of Conditions on Monday, June 26,2006, it did not tender performance by delivering the deed (paragraph 10) and possession of the premises (paragraph 11) by that date, much less by the actual June 24, 2006 expiration of the 30-day period. Thus, pursuant to the express language of paragraph 13, Cold Spring’s failure to deliver title and possession at the expiration of the extended time period obligated it to refund the Mitchells’ deposit forthwith.
The allowance of the defendants’ motion for summary judgment on their counterclaim for the return of their purchase and sale agreement deposits totaling $22,800.00 is affirmed.
So ordered.

 The motion judge also ruled that existing issues of material fact precluded summary judgment on the remaining count of Cold Spring’s complaint for the cost of construction “extras.” Thus, the “judgment” recording the partial allowance of the Mitchells’ summary judgment motion entered on the docket was not a “final” judgment adjudicating all of the parties’ claims. As there is no indication in the record that Cold Spring filed a Mass. R. Civ. R, Rule 54, motion for the entry of a separate judgment on the Mitchells’ counterclaim for the return of their deposits, Cold Spring’s appeal is premature. However, given that the single, dispositive issue on this appeal has been briefed and argued by both parties, we exercise our discretion to review and decide this interlocutory appeal on its merits.

 Apparently relying on the Mitchells’ unsworn assertion in their motion that the original closing date was May 23, 2006, the motion judge mistakenly concluded that the 30-day extension period expired on June 22, 2006. However, the decision on the Mitchells’ summary judgment motion remains the same when the May 25,2006 closing date specified in the parties’ agreement serves as the basis for the Rule 56 inquiry.