Sara A. O'Connor *vs.* County of Bristol & another.

Bristol. October 29, 1952. — February 3, 1953.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*County. Retirement. Public Officer. Words,* "Elected official."

A member of the State retirement system who by appointment and subsequent election held the office of county commissioner from 1944 to November, 1948, did not become a member of the county retirement system where it appeared that he was over fifty-five years of age at the time of his original appointment, that he never made any contributions to the county system, that there was no transfer of funds from one system to the other in his case, and that upon his becoming seventy years of age during his tenure of office no notice of his impending retirement was given to the county commissioners under G. L. (Ter. Ed.) c. 50, § 6A, inserted by St. 1948, c. 15, § 3. [745–746]

One who was elected county commissioner in 1946 for a term of four years but was never a member of the county retirement system, although he was a member of the State retirement system, was not affected in his right to continue to hold his office for the full term by

G. L. (Ter. Ed.) c. 32, § 5 (1) (d), as appearing in St. 1948, c. 15, § 1, upon his attaining the age of seventy years, the "maximum age for his group," in May, 1948. [746]

The incumbency of office of a county commissioner elected in 1946 for four years, who was never a member of the county retirement system nor subject to G. L. (Ter. Ed.) c. 32, § 5 (1) (d), as appearing in St. 1948, c. 15, § 1, upon attaining the age of seventy years, the "maximum age for his group," in May, 1948, did not continue "only until the next regular election" in November, 1948, but continued until he voluntarily resigned three days after the date of that election; and there was a vacancy in the office due, not to a "failure to choose" at that election within the first paragraph of G. L. (Ter. Ed.) c. 54, § 144, as appearing in St. 1935, c. 257, § 8, but to his resignation, so that an appointment to fill the vacancy under the third paragraph of § 144 was valid. [746–747]

One holding an elective office by appointment to fill a vacancy had the status of an "elected official" under G. L. (Ter. Ed.) c. 32, § 3 (2) (f), as appearing in St. 1945, c. 658, § 1. [747]

CONTRACT. Writ in the First District Court of Bristol dated March 10, 1951.

Upon removal to the Superior Court, the action was heard by *Forte*, J., who found for the plaintiff. The defendants alleged exceptions.

In this court the case was submitted on briefs.

*Harold R. Donaghue*, for the defendant treasurer of Bristol County.

*Frank Vera, Edwin Livingstone, Jr., & Joseph C. Duggan*, for the plaintiff.

QUA, C.J. This is an action of contract to recover a sum alleged to be due to the plaintiff for salary and expenses as one of the county commissioners of the county of Bristol from September 1, 1950, to December 31, 1950. The treasurer of the county is joined as a party in accordance with G. L. (Ter. Ed.) c. 35, § 20, as appearing in St. 1950, c. 659, § 2. The trial judge found for the plaintiff. A previous attempt to solve by declaratory judgment some of the questions here presented was unsuccessful. *Kilroy* v. *O'Connor*, 324 Mass. 238.

The principal issue is whether the plaintiff was ever legally chosen as county commissioner. On November 5, 1948, she was appointed to fill that office until a person

should be elected and qualified. Her appointment was purportedly made under the authority of the third paragraph of G. L. (Ter. Ed.) c. 54, § 144, as appearing in St. 1935, c. 257, § 8.[1] Regard must be had, however, to the entire section. The first paragraph provides that "Upon failure to choose" at an election a county commissioner the board of examiners shall issue precepts to call an election. The second paragraph provides that "Upon a vacancy by removal or otherwise," the board shall issue precepts for an election at the next biennial State election for which precepts can be seasonably issued, unless the term of the commissioner whose office is vacant expires on the first Wednesday of January following such election. The third paragraph, under which the plaintiff claims, provides that "Also upon such vacancy" the two remaining county commissioners and the clerk of the courts may appoint a person to fill the office until a person is elected thereto and qualified. The words "Upon failure to choose" in the first paragraph are contrasted with the words "Upon a vacancy by removal or otherwise" and the words "Also upon such vacancy" in the second and third paragraphs. The provision in the third paragraph for a temporary appointment becomes operative only if the office has become vacant by "removal or otherwise" and not if the vacancy is the result of "failure to choose" at an election. It becomes necessary therefore to inquire into the circumstances that brought about the vacancy which the appointment of the plaintiff was intended to fill.

Those circumstances appear from facts agreed upon by the parties, which we construe as constituting a case stated. In 1944 Richard B. O'Connor, the husband of the plaintiff, was an employee in the registry of motor vehicles and as such was "subject to" the State employees' retirement system. In December of that year, while on leave of absence from his State position, he was appointed to fill a vacancy as county commissioner for the county of Bristol. In No-

[1] Amended in respects not here material by St. 1939, c. 31, § 4.

vember, 1946, at the regular election, he was elected to a full four year term as such commissioner, to expire on the first Wednesday of January, 1951. An extension of his leave of absence was granted. In June, 1947, he resigned his position in the registry of motor vehicles. On May 22, 1948, he became seventy years of age and became eligible to receive a pension by virtue of his previous contributions to the State retirement fund. He made no contributions as county commissioner to any retirement fund. On November 2, 1948, a general election was held in Bristol County, but "no contest . . . took place" for the office of county commissioner held by Richard B. O'Connor, whose term normally would not expire until 1951. He continued to discharge the duties of his office until November 5, 1948, three days after the date of the election, when he submitted his resignation to the two other county commissioners. On the same day his resignation was accepted by the other commissioners, and Mrs. O'Connor was appointed to the vacancy, as hereinbefore stated, and took the oaths of office. She continued to serve as county commissioner until the term for which her husband had been elected expired on January 3, 1951.

It is the contention of the defendants that under the law relating to retirement systems Richard B. O'Connor, upon his election as county commissioner in November, 1946, became an "employee" of the county as an official "elected by popular vote," within the definition of "employee" contained in G. L. (Ter. Ed.) c. 32, § 1, as then appearing in St. 1945, c. 658, § 1, and that, having become seventy years of age, the "maximum age for his group," on May 22, 1948, he automatically ceased to hold office as county commissioner at "the next regular election" on November 2, 1948, because of the provisions of G. L. (Ter. Ed.) c. 32, § 5 (1) (d), as appearing in St. 1948, c. 15, § 1, wherein it is provided that "Any member holding office by popular election at the time of attaining the maximum age for his group . . . may continue to serve in such office after attaining such maximum age but only until the next regular election." See also

G. L. (Ter. Ed.) c. 50, § 6A, inserted by St. 1948, c. 15, § 3, providing for the filling at the next regular election of expected vacancies in State, city, or town offices due to superannuation retirements and for the giving by the retiring authority to county commissioners, mayors and aldermen, and selectmen of six months' notice of impending retirements. The defendants then contend that the office held by Richard B. O'Connor became vacant at the 1948 election; and that the office could have been, and should have been, filled at that election. If this is correct, it would seem to follow that the vacancy which was purportedly filled by the appointment of the plaintiff existed by reason of "failure to choose" at the 1948 election rather than by "removal or otherwise," and that therefore the two remaining county commissioners and the clerk of the courts had no authority to appoint the plaintiff.

It seems to us, however, that on the facts agreed Richard B. O'Connor never became a member of the retirement system of the county of Bristol. He made no contributions during the period of nearly four years while he held the office of county commissioner. He was originally a member of the State retirement system. The office of county commissioner, when elective offices were included in any system, was included in the county system. When O'Connor became a county commissioner in December, 1944, he could not become a member of the county system because, if for no other reason, he was then over fifty-five years of age. G. L. (Ter. Ed.) c. 32, § 21 (3), as then appearing in St. 1941, c. 670, § 4. No legislation has been brought to our attention, and we have discovered none, that had the effect of bringing him into that system between that time and the date of his resignation, November 5, 1948, three days after election day that year. It is true that by St. 1945, c. 658, § 1, provision was made in what is now G. L. (Ter. Ed.) c. 32, § 3 (8) (a), (d), for transfers from one system to another, to be "effectuated" by the transfer of funds; but there is nothing in the record before us to suggest that this was done in the case of Richard B. O'Connor, and the fact

that he made no contributions as county commissioner fairly requires the inference that it was not done. No notice of his impending retirement was given by the retiring authority to the county commissioners under G. L. (Ter. Ed.) c. 50, § 6A, inserted by St. 1948, c. 15, § 3.

If we are correct in thinking that Richard B. O'Connor never became a member of the county of Bristol retirement system, his right to continue to hold his office was not, in our opinion, affected by the provision of G. L. (Ter. Ed.) c. 32, § 5 (1) (d), as appearing in St. 1948, c. 15, § 1, that "Any member holding office by popular election at the time of attaining the maximum age for his group . . . may continue to serve in such office after attaining such maximum age but only until the next regular election." We think that this provision has reference only to offices which are subject to the retirement system to which the member belongs. The office of county commissioner of the county of Bristol was subject to the retirement system of that county. The fact that O'Connor in 1948 was still an inactive member of the State retirement system and might become entitled to a superannuation allowance from that system based upon his former service for the State did not, we think, affect his tenure of office as county commissioner. Each of the several retirement systems, State, county, city or town, is in general an independent unit, having its own separate assets and liabilities and is under the jurisdiction of its own separate board. G. L. (Ter. Ed.) c. 32, § 20, as appearing in St. 1945, c. 658, § 1, and as amended. It does not seem likely, we think, that the Legislature would intend that the right of a person to hold for the full statutory term an elective office subject to a system of which he is not a member should be affected by the fact that he is an inactive member of some other system by reason of prior service therein.

This line of reasoning brings us to the conclusion that Richard B. O'Connor had the right to continue in office after the election of 1948 until the end of the term for which he was elected, and that his incumbency of the office was

terminated only by his voluntary resignation on November 5, 1948. It follows that there could have been no election of his successor on November 2, 1948; that the vacancy in the office was not due to "failure to choose," but was due to "removal or otherwise" (resignation); and that the appointment of the plaintiff as his successor was valid.

The defendants further contend that the plaintiff cannot recover her salary for the latter part of 1950, because she herself became seventy years of age on June 4, 1950. They assert that, although she was not a member of the county retirement system, because she originally entered the service after attaining age fifty-five (G. L. [Ter. Ed.] c. 32, § 3 (2) (f), as then appearing in St. 1945, c. 658, § 1), yet she came within the provision of said subparagraph (f) that "No such employee other than an elected official . . . shall remain in the service . . . after attaining the maximum age for the group in which he would have been classified if he had become a member . . . ." They point to the fact that the plaintiff was never actually elected but was appointed to the office of county commissioner, as hereinbefore stated. We think, however, that the words "elected official" were intended to distinguish persons holding elective office from other "employees" — a distinction which also appears elsewhere in the retirement laws and for which valid reasons exist. The office of county commissioner was undoubtedly an elective office. We do not think that the Legislature intended by subparagraph (f) to apply in the unusual instance where a county commissioner happens to be appointed to fill a vacancy occurring in a certain manner a rule of tenure different from that usually applicable under the statutes to the same office.

No question is presented as to the date referred to by "the next regular election" in G. L. (Ter. Ed.) c. 32, § 5 (1) (d), as appearing in St. 1948, c. 15, § 1. We do not intimate by anything we say that the reference is to election day, when the identity of no successor could be known, and before any determination of the persons elected could

be made under G. L. (Ter. Ed.) c. 54, § 122, as amended by St. 1935, c. 257, § 7. See G. L. (Ter. Ed.) c. 54, § 116, as amended by St. 1946, c. 130, § 3.

*Exceptions overruled.*