368 Mass. 620 (1975)
335 N.E.2d 349
JOHN B. PALMER
vs.
BOARD OF SELECTMEN OF MARBLEHEAD & others.
Supreme Judicial Court of Massachusetts, Essex.
February 6, 1975.
September 29, 1975.
Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.
Paul L. Lausier, Town Counsel, for the Board of Selectmen of Marblehead & others.
John N. Nestor for the plaintiff.
Francis X. Bellotti, Attorney General, and Mitchell J. Sikora, Jr., Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.
Robert H. Quinn, for Massachusetts Chiefs of Police Association & another, amici curiae, submitted a brief.
Henry Wise & Robert L. Wise, for State Police Association of Massachusetts, amicus curiae, submitted a brief.
*621 HENNESSEY, J.
In this case we are called on to decide whether G.L.c. 41, § 108L,[1] establishing a career incentive pay program for certain regular full time police officers, includes an officer who gained his baccalaureate degree before being appointed to his town police department and before his town had adopted § 108L. Salary increases are based on credit points for semester hours completed.[2] The evidence as taken from a stipulation of facts reveals that Marblehead (the town) adopted § 108L on March 8, 1971.[3] The plaintiff thereafter on April 7, 1971, was appointed a regular full time police officer, effective April 14, 1971. He had been awarded a degree of Bachelor of Science in Accounting from Bentley College on June 7, 1969. The plaintiff's academic records were forwarded to the State board of higher *622 education, the State agency charged under the act with certifying State reimbursements to towns and cities. The board, in accordance with its existing practice, found that the plaintiff was eligible for an incentive pay increase in the amount of twenty per cent and notified the town by letter to that effect. The town refused to pay the increased salary. The plaintiff then brought a petition for a writ of mandamus to compel the proper town authorities including the chief of police, the board of selectmen and the town accountant to pay him the monies allegedly due him under § 108L. The Superior Court judge ruled that the plaintiff was eligible for the disputed pay raises and ordered that the writ issue. The town appealed to the Appeals Court which in a rescript opinion reversed. Palmer v. Selectmen of Marblehead, 2 Mass. App. Ct. 832 (1974). We granted the plaintiff's application for further appellate review.
After this case was argued before the full court, St. 1975, c. 452, was enacted, and approved on July 11, 1975. That act, in substance, and in pertinent part, amended G.L.c. 41, § 108L, by providing that all points to be awarded for semester credits and degrees shall be credited "notwithstanding the date of appointment" of the officer.[4]
The court thereafter informed the parties and amici that, arguably, the amendment of the statute resolved the issues of this case, and that a full opinion by the court might be redundant. The parties and amici were permitted to file memoranda with the court as to these propositions. The Attorney General urged that a full opinion could be useful to "settle the policy of this statute and obviate further litigation." The town, on the other hand, urged the publishing of a full opinion on the *623 ground that the town, although it accepted § 108L, has never accepted St. 1975, c. 452. Indeed, the town now contends that § 108L is no longer applicable to this case or effective in the town, by reason of the amendment. Cf. Brucato v. Lawrence, 338 Mass. 612, 616 (1959); Dudley v. Cambridge, 347 Mass. 543, 545-546 (1964). The town further points out that the 1975 amendment has no effect on its argument addressed to the words "in the field of police work" as they appear in § 108L.
We hold that the trial judge was correct in his ruling that the plaintiff was eligible for the disputed pay raise. We reach this conclusion based on our construction of § 108L without regard to the provisions of St. 1975, c. 452. Essentially, we are thus concluding that the effect of the amending statute was nugatory, in so far as it applies to this case. The circumstance that the Legislature chose in 1975 to amend the statute to establish rights "notwithstanding the date of appointment" does not, to say the least, affect our conclusion that the Legislature intended the same result to flow from the original enactment of § 108L.
Accordingly, we need not and do not reach the issues now intimated by the town as arising from the 1975 amendment. We proceed to a discussion of the issues as originally argued before us, in light of § 108L and without regard to the amendment, including a consideration of the effect of the statutory words "in the field of police work."
1. The parties and the amici curiae[5] discuss at length one of the issues in terms of whether § 108L is to be given retroactive effect. They cite the well established principle that a statute conferring substantive rights, as opposed to one defining procedural practice, is not to have retroactive application unless the Legislature clearly *624 so intended. See, e.g., Hanscom v. Malden & Melrose Gas Light Co. 220 Mass. 1, 3 (1914); Foley v. Springfield, 328 Mass. 59, 61 (1951); Ricker v. Northeastern Univ. 361 Mass. 169 (1972); McCarthy v. Sheriff of Suffolk County, 366 Mass. 779 (1975). See also Brucato v. Lawrence, 338 Mass. 612, 617 (1959). However, the sense in which "retroactivity" is an issue in this case must be clarified somewhat, for, as we said in McCarthy v. Sheriff of Suffolk County, supra, at 327, "The fact that a nonprocedural statute applies to the plaintiffs does not, in and of itself, make that statute retroactive." Cf. Brucato v. Lawrence, supra.
When the town adopted § 108L on March 8, 1971, it is clear that substantive rights in the police officers and correlative duties in the town were created; before that date a police officer in the town had no right to incentive pay and the town had no duty to pay such incentive pay. Hart and Sacks, The Legal Process, 141-145 (Tent. ed. 1959). However, neither the plaintiff, nor any other police officer, is making any claim for incentive pay alleged to have accrued prior to the effective date of § 108L when those rights were created. Thus, we are not asked to read § 108L as creating substantive rights retroactively.
Rather, the issue is whether § 108L may be deemed to have effect when the condition of earned credits exists as a condition prior to appointment to the police force or town acceptance of the act. To construe the requirements of § 108L as being satisfied by prior events does not result in retroactivity. "Neither does the fact that ... [a statute] draws on antecedent facts for its operation." McCarthy v. Sheriff of Suffolk County, supra. Cf. Cox v. Hart, 260 U.S. 427, 435 (1922); Lewis v. Fidelity & Deposit Co. 292 U.S. 559, 571 (1934).
Nevertheless, the question remains whether the Legislature intended that § 108L be triggered by prior conditions and that inquiry in turn depends on the statutory *625 language and the purposes underlying the statute. Hart and Sacks, op. cit. at 1410-1417.
With respect to statutory language, the decision of the Appeals Court in this case denying the plaintiff relief is hinged on the phrase "furthering their education" which appears in the first paragraph of the statute. See n. 1. The Appeals Court read that phrase as necessarily implying "obtaining education additional to that which one already has, and therefore a full-time police officer must, in order to `further' his education within the meaning of § 108L, obtain education additional to that which he had when he became a full-time police officer." Palmer v. Selectmen of Marblehead, 2 Mass. App. Ct. 832 (1974).
While that reading of the word "further" is not unreasonable, we think the phrase is best considered both in the context of the entire phraseology of the statute which imposes no time limitations on when credits shall be earned and in light of the legislative policy sought to be effectuated by the act.[6] When so considered "further" can be inferred to mean attaining educational levels beyond the minimum requirements set for qualifying as a police officer regardless of when those levels are reached. See G.L.c. 31, § 6A (high school graduate or equivalent). We note that the opening sentence of § 108L, of which the phrase "furthering their education" is a part, simply states that it is establishing a career incentive pay program offering base salary increases to regular full time police officers. The implication is that *626 the program applies to all police officers. See also the second paragraph which states increases "shall be predicated on the accumulation of points earned"; it does not specify when earned.[7]
Additional support for this interpretation of § 108L is found in the legislative history and the policy underlying the act.[8] Chapter 835 of St. 1970, adding c. 41, § 108L, to the general laws was a compendium of several House and Senate bills. See, e.g., 1970 House Doc. Nos. 328, 332, 909, 1645, 5851, 5882; 1970 Senate Doc. No. 1599. Significantly, the earlier versions of the bill contained an emergency preamble which in pertinent part provided that this bill is "to provide forthwith for a career incentive program for the recruitment and retention of well qualified police department personnel" (emphasis added). The reference to recruitment would seem to support the notion that the program was to apply to educational *627 credits obtained before joining a police force. The various earlier versions of the bill differed with respect to the law enforcement departments, State and local, eligible for the incentive program, the percentage pay scale, and the amount of reimbursement due local municipalities from the State, but the preamble remained constant.
The preamble was first omitted in 1970 House Bill No. 5882, which established the fifty per cent reimbursement plan and is, in substance, the basis of St. 1970, c. 835. Are we to infer that the dropping of the emergency preamble was intended to negative the legislative policy of aiding recruitment? We think not. Rather, we believe that one of the purposes of § 108L is to improve the educational level of the police force through recruitment and the luring of, among others, college educated persons.[9]
Furthermore, to deny incentive pay to an officer simply because he or she earned credits or a degree before joining the force would not only frustrate the legislative purpose, but would result in untenable distinctions: of two police officers serving together, both with a college degree, one might and one might not get incentive pay based on when the degree was obtained; a college education would be a liability to a recruit in terms of a comparative pay scale; an officer with an associate's degree when he joined the force would receive no credit therefor; should he continue school he might or might not be entitled to pay as a baccalaureate candidate depending on whether credit was given for the prior associate degree; a person joining the force with only a high school diploma would only have to complete ten credit hours before receiving a salary increase, whereas a college educated person would be required to earn *628 between thirty and 150 credit hours depending on whether the 120 credit hours for the prior college baccalaureate would be credited (see n. 2); a college educated police officer could receive less pay than a person with ten credit hours.
Similar results would flow if the statute were limited in operation to when a town or the State adopted § 108L; for example, a senior police officer with a degree would receive less pay in so far as educational credits were concerned than would the newest recruit since acceptance of the act. Such results do not lead to a logical application of the statute and we cannot believe that the Legislature intended these results. "A statute as a whole ought, if possible, to be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason." Morrison v. Selectmen of Weymouth, 279 Mass. 486, 492 (1932). Board of Appeals of Hanover v. Housing Appeals Comm. in the Dept. of Community Affairs, 363 Mass. 339, 364 (1973). See Commonwealth v. Lamb, 365 Mass. 265, 268-269, 270 (1974); McCarthy v. Sheriff of Suffolk County, 366 Mass. 779, 787 (1975) (Braucher, J., dissenting in part).
Finally, and of some importance, we believe that the application and interpretation of § 108L by the agency charged with its enforcement, although not binding on us, is entitled to our consideration. Cf. Save the Bay, Inc. v. Department of Pub. Util. 366 Mass. 667, 687 (1975); G.L.c. 30A, § 14 (8), second paragraph. Under § 108L the State board of higher education shall certify the amount of reimbursement due towns that have accepted the act. The board, apparently after requesting an opinion from the Attorney General as to the effect of § 108L,[10] promulgated regulations which provide, inter alia, that with respect to full time police officers of a *629 municipality's police department the incentive pay program applies to credits earned both before the effective date of § 108L and before a person joins the police force.[11]
Moreover, it appears that both State police officers and numerous town police officers have been and currently are receiving pay increases despite obtaining their degrees prior to joining the police force and prior to the respective authority's acceptance of § 108L. Indeed, the State police use the pay incentive as a recruitment inducement, including it in a recruitment brochure.
We think that the State board of higher education has correctly construed § 108L. In sum, we conclude that § 108L refers to educational credits whenever earned and as such includes courses completed precedent to its effective date and precedent to appointment to the police force. In this manner will the level of education be best upgraded. We believe the Legislature so intended. See statutes cited in n. 7. Cf. c. 147, § 21A (appointment of police cadets); c. 41, § 96B (police officers required to attend police training school).
2. The town's second argument is that it should not be bound to pay the plaintiff even if the State board of higher education certifies the credits because the acts of the board did not conform to statutory provisions. Ryan v. Somerville, 328 Mass. 324 (1952). The claim is answered by our construction of § 108L. Once the statute was accepted by the town it had a legal duty to pay the amounts due the plaintiff as certified by the board. See Brucato v. Lawrence, 338 Mass. 612 (1959) (payments due employees pursuant to annual step rates set forth in *630 State statute must be paid). Of course, as the town argues, a municipality need not in the first instance seek certification by the board but then the town would have to pay the amount due a police officer without reimbursement from the State.
3. The town makes one final challenge to the board's certification of the plaintiff's credits. It argues that § 108L does not cover the degree in accounting that the plaintiff has earned, or for that matter any liberal arts credits and degrees, since the statute refers to "education in the field of police work." We think the statute is not to be so narrowly construed. Where the Legislature intended to limit courses to studies directly related to law enforcement, it has expressly done so. See c. 41, § 108M, which provides that a police officer must be enrolled in a "police, law enforcement, criminal justice or police oriented course of study." See n. 7, supra.
The short answer to the town's argument that a course in "furniture design" may be rewarded with incentive pay is that the board is charged with certifying the credits earned and it may, we believe, exclude courses totally unrelated to and of no benefit with respect to law enforcement in the community.[12] As the President's Commission on Law Enforcement and Administration of Justice "Task Force Report: The Police," at 128 notes: *631 "The complex responsibilities and duties of police work require that field personnel understand their community and conditions which breed criminal and delinquent conduct. This understandably can best be gained through a liberal education."
Judgment of the Superior Court affirmed.
NOTES
[1] General Laws c. 41, § 108L, inserted by St. 1970, c. 835, provides in pertinent part: "There is hereby established a career incentive pay program offering base salary increases to regular full-time members of the various city and town police departments, the division of state police in the department of public safety, the capitol police and the metropolitan district commission police, as a reward for furthering their education in the field of police work."
[2] The method of computing credit points provided for in § 108L is as follows: one point for each semester hour credit earned toward a baccalaureate or an associate degree; sixty points for an associate degree; 120 points for a baccalaureate degree; and 150 points for a degree of master or for a degree in law. The corresponding salary increases are three per cent for ten points; six per cent for twenty-five points; ten per cent for forty points; fifteen per cent for sixty points; twenty per cent for 120 points; and thirty per cent for 150 points.
[3] Section 108L was inserted in the General Laws by St. 1970, c. 835; it was signed into law on August 28, 1970, and became effective ninety days thereafter. The act is self-executing with respect to State police officers (the State police, the Capitol police, and the Metropolitan District Commission police) but is not self-executing for cities or towns. The latter entities must, by appropriate vote, affirmatively adopt its provisions. A city or town will receive one-half of the incentive program cost from the State. It is not uncommon for the Legislature to provide that a statute of general application shall have effect in each city and town only on its acceptance by the entity. See Brucato v. Lawrence, 338 Mass. 612 (1959), and cases cited at 614-615.
[4] Statute 1975, c. 452, amends § 108L in other respects which are not material here. In particular, we note that a provision that the officers' credits or degrees must be "earned in courses leading towards a degree in law enforcement" is not applicable to credits or degrees earned or "enrollments," prior to July 1, 1976.
[5] The Attorney General and the Massachusetts Chiefs of Police Association (with the Massachusetts Police Association) and the State Police Association of Massachusetts were permitted by the court to file amicus briefs.
[6] The words of Circuit Judge Learned Hand in Federal Deposit Ins. Corp. v. Tremaine, 133 F.2d 827, 830 (2d Cir.1943), seem appropriate: "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." See Peter Pan Fabrics, Inc. v. Martin Weiner Corp. 274 F.2d 487, 489 (2d Cir.1960), wherein it is stated that it "is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning." (L. Hand, J.)
[7] Compare G.L.c. 41, § 108M, inserted by St. 1971, c. 115, which provides that a person who is then employed as a permanent police officer may receive full salary so long as he is enrolled for sixteen hours of classroom time, works twenty-four hours a week and is studying for a baccalaureate, master's or higher degree in a police, law enforcement, criminal justice or police career oriented course of study at an accredited college or university. See also G.L.c. 73, § 20 (free tuition to police officers at State college within commuting distance of town where employed).
[8] In 1968 the Governor in a message to the Legislature (House Doc. No. 4516) stated that "[a]dvanced education is the cornerstone of improved law enforcement." This statement is to be viewed against the backdrop of a 1967 report of the Massachusetts Committee on Law Enforcement (December 21, 1967, Pub. Doc. No. 820) which had found that the educational level of police officers in the Commonwealth tended to be among the lowest in the nation. P. 21. The committee recommended that police officers be required to have a high school diploma, recommended that salary levels be increased and further recommended that educational credits be considered in granting promotions. In 1969 a bill similar to § 108L was filed but not enacted. House Doc. No. 1075. See also the President's Commission on Law Enforcement and Administration of Justice "Task Force Report: The Police" (suggested educational level is two years of college).
[9] The town at oral argument stated that Marblehead does not have a policy of paying an officer on his or her initial appointment more money based on the holding of a degree.
[10] The Attorney General opined that § 108L applied to credits obtained both before local acceptance and before an individual joined the force. He noted that otherwise the statute would "pose severe administrative problems and create gross inequities" and further observed that "the purpose of the statute is to upgrade police forces and personnel" and that "education is ... a primary means of such upgrading, and I can perceive no reason why the chronology under which courses were undertaken should be a critical and deciding factor regarding eligibility." Rep. A.G., Pub. Doc. No. 12 (1971) 121-122.
[11] The board's regulations state in pertinent part: "In addition, and with respect to courses taken or degrees earned by regular full-time members of police departments of a municipality, points shall be awarded for: ...

"E) All courses taken after becoming such officers but before the acceptance by the municipality of Chapter 835;
"F) All courses taken before becoming such officers and before the acceptance by the municipality of Chapter 835."
[12] The board has so construed its role and has promulgated regulations which provide in relevant part: "The Board of Higher Education shall accept for point consideration from approved institutions courses in such degree programs as tend to contribute to the field of police efforts and effectiveness of police departments.... In considering other programs, the Board will consider higher education per se as of primary import in improving law enforcement, and will judge each other program separately on its merits."