WILLIAM J. DOHERTY vs. MAYOR OF EVERETT.[1]

Middlesex.  November 12, 1981. — February 18, 1982.

Present: ARMSTRONG, CUTTER & KASS, JJ.

*Municipal Corporations*, Vote in city council, Acceptance of local option
   statute, Municipal finance. *Statute*, Acceptance. *Police*, Career in-
   centive pay program. *Everett*.

In the circumstances, votes by the common council and the board of alder-
   men of the city of Everett overriding the mayor's veto constituted a
   valid acceptance of G. L. c. 41, § 108L, providing for career incen-
   tive salary increases to police officers.  [203-205]
Acceptance by a municipality of G. L. c. 41, § 108L, providing for career
   incentive salary increases to police officers, is not subject to further ac-
   tion under c. 44, § 33A, a provision of the municipal finance law.
   [205-207]


CIVIL ACTION commenced in the Superior Court Depart-
ment on September 20, 1978.

The case was heard by *O'Neill*, J., a District Court judge
sitting under statutory authority.

*Willie J. Davis* for the plaintiff.

*John F. Kryzovic*, City Solicitor, for the defendant.

KASS, J.  In May, 1975, the common council and the
board of aldermen of Everett (that city has a bicameral leg-
islature) voted in favor of a resolution to accept G. L. c. 41,
§ 108L, as inserted by St. 1970, c. 835.[2]  That statute pro-
vides for career incentive pay for regular full-time police of-

---

[1] At the inception of the action the mayor of Everett was George McCar-
thy.  His successor, Edward Connolly, was substituted as the defendant.

[2] The common council voted for the resolution 17 to 1, and the board of
aldermen voted for it 7 to 0.

ficers "as a reward for furthering their education in the field of policework."[3] The mayor vetoed the resolution and the common council and board of aldermen overrode his veto by votes of seventeen to one and four to two, respectively. Under section 18 of the city charter of Everett,[4] however, appropriation measures originate upon recommendation of the mayor. He has refused to make an appropriation recommendation to fund the incentive payment program, claiming defects in the acceptance of the incentive plan and failure to comply with G. L. c. 44, § 33A. The plaintiff, a police officer in Everett, complains, on behalf of himself and other police officers who have furthered their education in police work, that the city has refused to make incentive payments and seeks relief which includes ordering the mayor to initiate the appropriation process so that the city's obligations may be funded. A District Court judge sitting in the Superior Court by statutory designation dismissed the complaint, giving rise to this appeal by the plaintiff. The principal questions are: (1) Did the action of the Everett city council[5] work an acceptance of G. L. c. 41, § 108L? (2) Was implementation of the incentive payment program authorized by § 108L subject to further action under G. L. c. 44, § 33A, a provision of the municipal finance law?

1. *Acceptance of § 108L.* In the absence of direction in the text of a statute itself, its acceptance is achieved in accordance with the charter of the municipality. G. L. c. 4, § 4 (as amended through St. 1966, c. 253). The pertinent provisions of the city charter of Everett are §§ 15, 24 and 54 of St. 1892, c. 355, the texts of which, so far as material, are

---

[3] General Laws, c. 41, § 108L, provides that the Commonwealth shall reimburse any city or town which accepts the provisions of the statute for one half the cost of the incentive payments.

[4] The city charter of Everett was granted by St. 1892, c. 355. *Everett* v. *Curnane*, 329 Mass. 490, 492 (1952). Certain amendments enacted since are not material to the case at bar.

[5] The charter refers to the common council and the board of aldermen collectively as the council. St. 1892, c. 355, §§ 2 and 10.

set forth in the margin.[6]  We learn that a majority constitutes a quorum for legislative action (Section 15); that legislative powers are lodged in the common council and the board of aldermen (Section 24); and that, through incorporation by reference of pertinent general laws (Section 54), the legislative bodies may override a veto by the vote of two-thirds of the members present and voting.  G. L. c. 39, § 4.  It will be recalled that the common council (which consisted of eighteen members) voted to override the mayor's veto by seventeen to one and the board of aldermen (which consisted of seven members) voted to override the veto by four to two.  By reason of the absence or failure to vote (although no record of an abstention appears) of the seventh member of the board of aldermen, a two thirds vote was achieved. G. L. c. 39, § 4.  See also *Ellison* v. *Haverhill*, 309 Mass. 350, 351-352 (1941).  The votes of the two bodies of the city council of Everett were sufficient to accept § 108L.

If the votes were sufficient, as we have held, the city claims the acceptance process was nonetheless flawed because the final vote to override the mayor's veto, that taken by the board of aldermen, occurred on July 17, 1975, six days after approval of St. 1975, c. 452, an act amending § 108L, on July 11, 1975.[7]  The amendments contained in

---

[6] *Section 15.*  "In each branch of the city council a majority of the whole number of members provided to be elected shall constitute a quorum for the transaction of business, but a smaller number may adjourn from time to time."

*Section 24.*  "Except as herein otherwise provided the city council shall in general have and exercise the legislative powers of towns and of the inhabitants thereof, and shall have all the powers and authority given to city councils under the general laws of the Commonwealth, and be subject to the duties imposed on city councils; and the board of aldermen shall have and exercise all the powers, other than executive, given to selectmen of towns, and shall have all the powers and authority given to boards of aldermen of cities, and shall be subject to the duties imposed upon such boards."

*Section 54.*  "The general laws relating to the municipal indebtedness of cities, the general laws requiring the approval of the mayor to the doings of a city council or of either branch thereof, and relative to the exercise of the veto power by the mayor of a city . . . shall have full force, application and effect in said city."

[7] The common council voted to override the mayor's veto on June 2, 1975.

§ 108L were clarifying and technical in nature. A similar argument was rejected in *Palmer* v. *Selectmen of Marblehead*, 368 Mass. 620, 623 (1975), and that opinion is controlling here. As in *Palmer*, the amending statute does not affect the underlying controversy. The 1975 amendment did not alter the fundamental scope or criteria of the career incentive pay program.

In a third attack on the acceptance process, the city urges that the incentive pay program touches on the earnings of a class of city employees and its introduction in Everett is, therefore, an executive function. Legislative powers, as we have observed, are placed by § 24 of the charter in the city council and the acceptance of local option statutes is a legislative function. G. L. c. 4, § 4 (as amended through St. 1966, c. 253). *Jenkin* v. *Medford*, 380 Mass. 124, 126 (1980).[8] That the vote of the city council may have a financial consequence does not impinge on the executive functions of the mayor, see *Green* v. *Everett*, 179 Mass. 147, 151-152 (1901), or alter the nature of the city council's action.

2. *Was further action required under the municipal finance law in order to implement the incentive pay program?* On two previous occasions the Supreme Judicial Court has considered the relationship of G. L. c. 44, § 33A, to acceptance of a local option measure and has concluded that further action under § 33A was not required. In *Brucato* v. *Lawrence*, 338 Mass. 612 (1959), the court dealt with step-rate increases in the pay of certain civil service employees. This resulted in the same sort of self-executing future increases in municipal outlay for salaries as the education incentive pay program will produce. The analysis which the court made of § 33A in *Brucato* applies to the facts of the instant case. It is possible to distinguish *Brucato* in that the measure accepted by the municipality in that case required the vote of only a simple majority, whereas acceptance of G. L. c. 41, § 108L, as explained above, requires a two-

---

[8] The executive powers reposed in the mayor are to be found in §§ 18, 21, 32 and 39 of the charter.

thirds vote (unless the local charter otherwise provides). To the degree the incongruity in the vote required to accept the local option statute under consideration in *Brucato* and the two-thirds vote required by § 33A was of consequence, it was on the assumption in *Brucato*, for purposes of analysis, that the acceptance process was an "ordinance" and, thus, brought the second sentence of § 33A into play.[9] That second sentence provides that "no ordinance providing for an increase in the salaries or wages of municipal officers or employees shall be enacted except by a two thirds vote . . . ." But that distinction between *Brucato* and the instant case disappears in the light of *Oleksak* v. *Westfield*, 342 Mass. 50, 51-52 (1961), which considered acceptance by a city council of G. L. c. 41, § 108E, a statute closely related to the statute in the case at bar, and decided "that the acceptance of the statute . . . was not an ordinance" for purposes of § 33A. "An act once accepted," the court pointed out, "is beyond the power of the council to rescind" unless there exists express statutory authority so to do; an ordinance, by contrast can be repealed by another ordinance. *Id*. at 52-53. See also *Labor Relations Commn.* v. *Selectmen of Dracut*, 374 Mass. 619, 628 (1978).

When § 108L was enacted in 1970, *Brucato* and *Oleksak* had been decided. *Brucato*, particularly, invited the Legislature to speak clearly if the acceptance of statutes was to be subject to further action under the municipal finance law. *Brucato* v. *Lawrence*, 338 Mass. at 618. In the absence of express instructions in § 108L, we apply the principle that no further action is required. Compare *Mendes* v. *Taunton*, 366 Mass. 109, 113-117 (1974). We do not see a contrary direction in the phrase in § 108L which says, "Any city or town which accepts the provisions of this section and provides career incentive salary increases for police officers shall be reimbursed by the commonwealth for one half the cost of such payments upon certification by the board of

---

[9] The court expressly declined to decide whether accepting a local option statute fell within the second sentence of § 33A.

higher education." The words "and provides career incentive salary increases for police officers" appear to say no more than that making payments under the incentive program is a condition of obtaining State reimbursement. As an invocation of G. L. c. 44, § 33A, the words upon which the city focuses would be curiously indirect.

In light of the views we have set forth in this opinion, we hold that the mayor was duty bound, acting under the authority conferred upon him by St. 1892, c. 355, § 18, to submit to the city council recommendations for sums sufficient to cover career incentive pay increases earned by full-time members of the police department of Everett. The judgment dismissing the complaint is reversed, and a judgment shall be entered consistent with this opinion.

*So ordered.*