EVERETT RETIREMENT BOARD *vs.* BOARD OF ASSESSORS OF
EVERETT & others.[1]

Middlesex. November 15, 1984. — February 1, 1985.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Retirement. Municipal Corporations,* Municipal finance, Retirement board.
*Proposition 2½.*

The expense fund component of a municipal retirement system budget, duly
certified under G. L. c. 32, is not subject to control by the municipality
under G. L. c. 59, § 20A, as appearing in St. 1981, c. 782, § 9 (a
"Proposition 2½" measure). [306-308]

The expense fund component of a municipal retirement system budget, duly
certified under G. L. c. 32, is not subject to control by the municipality
under G. L. c. 44, §§ 31, 31A and 32 (provisions of the Municipal
Finance Law), inasmuch as a retirement system is an entity independent
of the municipality whose employees it serves. [308-309]

CIVIL ACTION commenced in the Superior Court Department
on November 29, 1982.

The case was heard by *Mel L. Greenberg,* J.

*John F. Kryzovic,* City Solicitor, for the defendants.

*Kevin F. Moloney* (*Ilana M. Quirk* with him) for the plaintiff.

KASS, J. For the fiscal year ending June 30, 1983, the Everett
retirement board (board), acting under G. L. c. 32, § 22(7)(*c*)
(iii), certified to the mayor a budget of $3,000,000 for the
pension fund,[2] plus $68,385 for the expense of administration.
The mayor rejected $39,021 of the administrative expenses, a
step which triggered this action by the board under G. L. c. 32,

---

[1] The mayor of Everett and the city of Everett.

[2] As defined in G. L. c. 32, § 1, as appearing in St. 1945, c. 658, § 1,
"Pension fund" means "the fund established under the provisions of subdivi-
sion (3) of section twenty-two to provide for the payment of all pensions
payable on account of members from contributions made to any system by
any governmental unit to which such system pertains."

§ 22(7)(*c*)(iv), to recover the entire amount which it had certified. The question for decision is whether the expense fund component of retirement system budgets duly certified under G. L. c. 32 is subject to control by municipalities under G. L. c. 59, § 20A, as appearing in St. 1981, c. 782, § 9 (a "Proposition 2½" measure), or G. L. c. 44, §§ 31, 31A and 32 (provisions of the "Municipal Finance Law"). A judge of the Superior Court held that the retirement system provisions in c. 32, §§ 1-28, are paramount and that Everett could not deny to the board what it had requisitioned. We affirm.

Our review cannot skirt a stolid — and to the reader doubtless stupefying — march through the relevant statutory territory. The governing provisions appear in G. L. c. 32, §§ 1 through 28, and most notably in § 22(7), which has to do with appropriations for the various funds to which the legislative scheme refers. In this case we are concerned with two of those funds: the *pension fund* (see note 2, *supra*) and the *expense fund*. There is no quarrel about the $3,000,000 budget request for the pension fund. The board, conformably with § 22(7)(*c*)(i), as appearing in St. 1945, c. 658, § 1, furnished the actuary of the Division of Insurance with "information . . . to enable him to determine the amount to be paid for the pension fund" for the next fiscal year. The actuary "in a written notice to [the] board"[3] specified "the amount so required to be paid," viz., $3,000,000. G. L. c. 32, § 22(7)(*c*)(i). See generally as to the process, *County Commrs. of Norfolk County* v. *Norfolk County Retirement Sys.,* 377 Mass. 696, 697-698 (1979).

The next step, prescribed by § 22(7)(*c*)(iii), as appearing in St. 1945, c. 658, § 1, requires the board to certify to the mayor[4] "the amounts necessary to be paid for such fiscal year for *the three aforesaid funds* of such system" (emphasis added). The amounts so certified, the statute then flatly says, "shall be appropriated and paid . . . to the treasurer-custodian" of the

---

[3] That notice was given February 4, 1982, later than § 22(7)(*c*) prescribes, but nothing turns on this.

[4] In the case of a town, the certification is to the selectmen.

retirement system. One of the "three aforesaid funds" is the "expense fund,"[5] the focus of controversy. That fund is described in § 22(5) (as appearing in St. 1945, c. 658, § 1) as follows:

> "The expense fund of each system shall be the fund to which shall be credited the amount appropriated for any fiscal year, as provided for in subdivision (7) of this section, for the purpose of providing for the payment of all expenses of administration of the system for such year, and from which all such expenses shall be paid."

The sum which the city declined to appropriate, $39,021 of the expense fund, was the amount by which the board's requisition for expenses exceeded the expense fund for the previous fiscal year.[6] The principal reason for the increase, the Superior Court judge found, was the inclusion in the budget of a new position, administrative secretary, at $20,000.[7] It was the mayor's position that, in the face of Proposition 2½, he could not concur in any increase in the cost of running the city pension fund. The board thereupon invoked the remedy in § 22(7)(c)(iv), as appearing in St. 1945, c. 658, § 1, which provides that "[i]f any governmental unit fails to include any amounts so certified [i.e., the amounts certified by the board to the mayor] in its appropriations . . . the assessors . . . shall nevertheless include such amounts in the next tax levy.[8] All amounts so certified shall be a legal obligation of any such

---

[5] The other two funds are the pension fund, i.e., the main business, and the special fund for military service credit, which plays no role in the case.

[6] Mechanically what occurred is that the mayor recommended a budget to the city council reduced by $39,021. The city council failed to act on the budget, with the result that the budget as submitted by the mayor became the operative one. See G. L. c. 44, § 32.

[7] Under G. L. c. 32, § 20(4)(e), as appearing in St. 1982, c. 630, § 22, a retirement board is authorized to employ "such clerical and other assistants as may be required to transact the business of such system."

[8] Hence, the inclusion of the assessors of Everett as principal defendants in this action.

governmental unit and may be recovered in an action of contract by the retirement board . . . ."

Against this legislative entitlement on behalf of the board, the defendants set up the countervailing policies contained in G. L. c. 59, § 20A, and G. L. c. 44, §§ 31-32. The former controls the amounts which governmental entities authorized to assess costs to cities and towns may levy. One of those controls is a limitation that the costs assessed will not exceed by two and a half percent the costs of similar services for the preceding fiscal year. Prescinding from the question whether the two and a half percent factor should be applied to the entire retirement board budget or just to the expense fund, it is sufficient to observe that a governmental entity may, in any event, assess costs "for services subscribed to at local option." G. L. c. 59, § 20A, as appearing in St. 1981, c. 782, § 9. Entry into the retirement system is a local option matter. G. L. c. 32, § 28(2). The provisions of G. L. c. 59, § 20A, therefore, afford the defendants no support. The insulation of municipal retirement systems from Proposition 2½ is confirmed by G. L. c. 4, § 4B, as appearing in St. 1981, c. 782, § 2, which permits cities and towns to revoke acceptance of a State law so as to extricate themselves from the accompanying financial obligations. Action taken under G. L. c. 32, however, is expressly excluded from that revocation option. See G. L. c. 4, § 4B(c).

Whether the defendants can draw any comfort from G. L. c. 44, §§ 31, 31A and 32, depends on whether the retirement board of a city or town is considered a municipal department or an independent body. On this question the cases have spoken: a retirement board established under G. L. c. 32 is independent of the city or town whose employees it serves. *Stone* v. *Treasurer of Malden,* 309 Mass. 300, 302 (1941). *O'Connor* v. *County of Bristol,* 329 Mass. 741, 746 (1953) ("Each of the several retirement systems, State, county, city or town, is in general an independent unit, having its own separate assets and liabilities and is under the jurisdiction of its own separate board"). *Buteau* v. *Norfolk County Retirement Bd.,* 8 Mass. App. Ct. 391, 392 (1979). That the retirement system is independent of the host municipality is underscored by a provision

in G. L. c. 32, § 28(3)(*b*), that for towns with a population of under 10,000, the employees are part of the county retirement system. As an independent body, a retirement board is not subject to the constraints which G. L. c. 44, § 31, places on any department of a city or town or the requirements which § 31A imposes on municipal officers. Cf. *Doherty* v. *Mayor of Everett,* 13 Mass. App. Ct. 202, 206 (1982).

A final word. The defendants lament that if retirement boards are not subject to municipal or judicial control, the sky will be the limit; there is no ceiling to what call a runaway retirement board might make on a municipality. There is some check. Under G. L. c. 32, § 21(1)(*a*), as appearing in St. 1982, c. 630, § 25, the Commissioner of Public Employee Retirement is to conduct an "in-depth field examination of each system at intervals not exceeding three years to ascertain its financial condition, its ability to fulfil its obligations, whether all parties in interest have complied with the laws applicable thereto, and whether the transactions of the board have been in accordance with the rights and equities of those in interest." Although oriented toward accounting and investment considerations, we think that the statutory language is sufficiently broad to enable the commissioner to discipline an errant board, perhaps through the regulatory power conferred by G. L. c. 32, § 21(4).

*Judgment affirmed.*